Good morning, may I please the court. My name is Ben Wiesinger. I represent the petitioner Katya Romero Velazquez. And the court has before it a motion to dismiss this petition for review. It was filed electronically yesterday and I present that to the court for its decision. You'd have permission of your clients to dispose of their case. My client has not been we have not been able to communicate with my client for a yes or no. That's a no. Can you dismiss their case that is on the merits without the permission of your client? I believe I have to your honor. Well, what is your authority? I mean you you have a responsibility as an attorney to your client. It seems strange to me that your client has been in the United States illegally for 10 years. She's tried every process to try and get admitted. And it seems strange to me that all of a sudden her attorney assumes the responsibility of saying no. On the merits you're going to lose and you don't even know anything about it. It just strikes me as a very strange position to put us into or you into. It is a very strange position for me to be put into your honor. The last I heard from my client was in December of 2008 when I explained to her the court's decision to deny her stay of removal. It is my belief that my client then departed to Mexico. And you base that upon what? The fact that we have not had any contact with her or her husband since then. They may have moved to New Mexico. She's been here for 10 years. True. But if that is true, if she did stay in the United States, then she violated the, excuse me, that she violated the terms of her voluntary departure, which then automatically became an order of removal. And therefore, she is subject to all the punishments, all the statutory and administrative bars that come along with an order of removal. In many of these cases where lawyers are put in the position of having to completely terminate on the merits their client's position, we get a long affidavit of what has been done to contact the client. The only thing I saw in the papers was some phone calls made to a phone that was last known. There was no investigator sent out to the home, no effort to see if there's a continuing address or anything such as that. Was anything else done other than someone making a phone call to the last known telephone number? Your Honor, we not only represented the petitioner, Katia Romero, and her husband, Jose Cortez, but we also represented another family member of Ms. Romero. We contacted every known party we could. By? By telephone and by mail, as the Court knows. And nobody has seen or heard from her. I'll be happy to submit a more complete affidavit if the Court requires or if it pleases the Court. But as of this time, we have had no reason to think she is anywhere but in Mexico. And this Court can no longer grant effective relief. Therefore, I, as an officer of the Court, I must move to dismiss the petition or else risk my own credibility and risk a censure against my client for presenting a meritless case. There was an effort on your part to have a valid process through her husband becoming a citizen and then the marriage allowing her to petition. But as I understand what you presented to us, that door has been closed. That's correct, Your Honor. And when was the door actually closed? When did you receive notice that this idea that you had of how you were going to keep them here was no longer available to you or to them? The door wasn't really shut finally until August of this year when our office received a notice of intent to deny the I-130. That's where the case gets a little unusual from our own perspective, because the initial interviews with the government, with the United States Citizenship and Immigration Services, occurred in the summer and fall of 2008. And then we didn't hear anything from USCIS regarding the I-130 until August of this year. And in fact, I was unaware of it until I started preparing for the case. The petition was filed in September of 2007. The record indicates in June of 2008 you were advised that there was no ability to – that the answer was no. This was in June of 2008. I apologize, Your Honor. What are you referring to in the record? Your papers that you filed. Now, the concern that I have is that you received a notice of our hearing in September, on September 30th – or July 30th of this year. In August, at least by August, you were aware of the problem. And yet we didn't hear anything until this morning. Now, you see, we prepare. We read all the briefs. We read the record. And we try to do that for all counsel and all parties to be fully prepared. We have 14,000 cases filed each year. It's a burden upon us, but we don't want an unnecessary burden. We didn't have to read any of that material. We could have used that time for something else that's before us. Why was it that we just found out now of this problem that took place some time ago? Your Honor, we've been efforting communication with the Petitioner and her husband ever since August of 2012. I maintained the hope up until the last possible minute that we would find her and that we'd be able to somehow either appeal or send in a response to the notice of intent to deny. You could have filed – moved for a continuance and told us why, but that isn't what you did. You moved to submit on the briefs. That is, we would take a case on the merits, which you now know we shouldn't. And it just seems to me a burden upon us when these issues come up and you're not fully advising us what takes place so that we can make a determination. A motion to continue would have been the obvious thing to have happen. And it was just – it seems to me that we should have known about this much before just yesterday. Well, I can do – the only thing I can do is apologize to the Court at this point. We did our best. Oh, in hindsight, you know something better could have been done. Mr. Wisinger, you said something that I'd like to ask you about. Yes, sir. You say that she – that your client cannot receive the relief she's seeking, which is a voluntary departure, because she's in Mexico. How do you know she's in Mexico? How do you know she's not hiding out in the United States? I don't know, Your Honor. So maybe she can receive that relief. Again, if she did remain in the United States beyond her period of voluntary departure, then the order automatically becomes a removal order, and it's violated one way or another. Has the service – pardon me, the service – has ICE moved to convert the voluntary departure order in an order of removal yet? They have not. And in my experience, they do not. It happens by operation of law when something else comes up, when, for example, if she were to show up in an adjudication interview sometime in the future, and an officer is here looking at this record, the officer will say, well, you were given voluntary departure on this date, but you stayed beyond the term. That's now an order of deportation. You are now inadmissible for 10 years. Thank you very much. We'll see you in 10 years. That's how, in my experience, that works. That would also occur if you were detained. Correct, Your Honor. Thank you. Maybe we should hear from the government to tell us how to get out of this mess. Can we hear from the government as to any suggested disposition? Well, we don't oppose the motion. Would you take your place up at the stand, please? This is recorded. Thank you, Your Honors. We don't oppose the motion to dismiss, Your Honor, as long as it's with prejudice. This Court denied her stay of removal and gave her a 14-day voluntary departure back in, I believe, December of 2008. Yes, December of 2008. The tolling of the voluntary departure will expire in 14 days after the filing date of this order. So we do not oppose the motion to dismiss. Government is ready for oral argument if the Court would like to proceed. It is up, obviously, to Your Honors. Well, yes, but we don't have this situation come up. You know, I've been on the Court 40 years now, and this is very unique, or maybe I wasn't paying attention before, but it strikes me that we're in a difficult position unless we're sure that we don't need notification from the party at interest that it's okay to dismiss on the merits. That's pretty interesting. And I'm concerned about what happened here, obviously, because we were not advised of the true situation so late. Fortunately, we did not grant the motion to submit on the briefs, which would have been a merits determination, in my view, inappropriately brought. We want the government to tell us how to get out of this. I understand the problem. I'm sure we all do. But we also want to be fair to every person who appears before us, whether they have guilt or innocence or otherwise. We have a constitutional responsibility to use due process. Now, you've had experience as a government lawyer. Why don't you tell us what we ought to do to solve the problem? Well, I'm not in a position, because I haven't had communications with the Petitioner. If the Court is concerned that she's not aware and it is a very good concern, that this is going to be dismissed without her knowledge, then we should proceed with oral argument, have the Court render a decision. Is the problem that I have, I share with Brother Wallace, is that we don't know that the Petitioner here knows that Mr. Weisinger is making a motion to dismiss her case with prejudice. Exactly, Your Honor. So then proceed and make a decision on the merits. Do you want to address the merits? I'm prepared to address the merits. If the Court wants to hear merits, that's fine. It's difficult for the government, because we don't have communications with the Petitioner. We don't know what's going on. We're prepared to argue the case. You mean as briefed? As briefed. All right. Essentially, yes. So it has been so the issues have been briefed. All right. Yes, our brief is thorough. I'm sorry. I could not provide a better answer. Counsel was telling us that there's an automatic entry of order because of things that transpired earlier. Is that your understanding? I'm sorry. I don't understand, Your Honor. Concerning the I-130 or the voluntary departure bar? The voluntary departure. As Aaron said, Mr. Wisinger, he said that the voluntary departure for 14 days automatically becomes an order of removal, which will be summarily executed whenever the Petitioner holds into view of any Border Patrol or other agent of the Department of Homeland Security. That is my understanding, unless she left during that 14-day voluntary departure period, then she left and the voluntary departure bar would not ensue. I see. So that is still an unsettled issue. Correct, because we're unaware of where she is. And this Court is the one, when it denied its stay motion, that provided the tolling of the 14-day voluntary departure period in December 08. So there would be a requirement before the voluntary departure order became an automatic removal order, there would have to be a fact established as to when she departed. If she departed within those 14 days, then it wouldn't become a removal order. Correct. However, Your Honor. She would still be able to come back to this country without facing a 10-year bar. Well, Your Honor, that is tricky because, yes, according to the voluntary departure bar rules. However, in Section 1182A9B, I'm sorry, this is a long one. It's 1182A9B, little I, second I. There is a 10-year bar regardless because she's an illegal entry and she stayed for a period longer than one year. And that has to do nothing with the voluntary departure itself. It has to do with the fact that she illegally entered, entered without admission, I believe in 1991, and she was obviously here longer than a year. So she does have a 10-year bar regardless. Are those facts about her illegal entry undisputed? Yes, Your Honor. That comes from her NTA, her notice to appear, excuse me, and because she admitted and conceded her – I'm sorry. She admitted the factual allegations of her notice to appear and conceded removability. So she has admitted those. And I understand that that was your reason why you were arguing no prejudice.  Because she has a 10-year bar regardless. 10-year bar. I understand. Taking out the voluntary departure. Correct, Your Honor? And she's been here 20 years. She just has to be here more than one year. Correct. I'm sorry. Yes, Your Honor, from 1991. So as soon as October 1992 occurred, she had that bar because she was here longer than one year with an illegal entry. Any other questions? Do you have any questions? If you'd like me to speak about anything else, I'd be more than happy to. Okay. Thank you, Your Honor. All right. The case of Romero-Velasquez v. Holder will be submitted for decision. Thank you very much, counsel.
judges: Restani, Wallace, Bea